Johnny W. KROMER, Plaintiff,

v.

PHOTO–SCAN CORPORATION, Defendant.

Civ. A. No. 4–917.

United States District Court
N. D. Texas,
Fort Worth Division.

Oct. 27, 1969.

---

462

Crumley, Murphy & Shrull, by Carl G. Quisenberry, Fort Worth, Tex., for plaintiff.

Emanuel Warner, Santa Monica, Cal., for defendant.

WILLIAM M. TAYLOR, Jr., District Judge.

## OPINION

This is a case arising out of termination of a contract. The contract in ques-tion was entered into by Johnny W. Kromer and Photo-Scan International. By its terms Kromer was to be the Fort Worth area distributor of Photo-Scan products. Each claims that the other breached the contract, and this is the only question before the court at this time. There is no dispute that $6500.00 was paid by the Plaintiff and that this amount came into the possession of the Defendant with the further agreement that $3351.25 was the balance remaining to be paid. This comes to $9851.25 which is the amount called for in the con-tract under paragraph two: "Deposit— 15% of $65675.00=$9851.25." The Plaintiff, Johnny W. Kromer, commenced business no later than September 8, 1966.

The progress of Kromer's business is indicated by correspondence beginning in December.

1) On December 9, 1966, Plaintiff's employee Kester wrote:

"Dear Johnny:

I would like to take this opportunity to submit my full and complete resig-nation from Photo-Scan of Fort Worth.

In view of the capital situation the arrangement that you and I have, as well as my family's discontentment, I think it would be in the best interest of all concerned to severe all connec-tions effective December 15, 1966.

It is past history to rehash problems and discussions we have so let's just leave it the way it is. Rest assured I will be available for consultation and service, should you desire.

Sincerely,

Earl H. Kester"

2) On December 31, 1966, Plaintiff wrote Defendant:

"Dear Mr. Hibbard:

Hope you are much better by now and able to be back in sunny Califor-nia.

As we have not received an answer to our request of December 16 regard-ing selling to Mr. Jess Hendricks, I

am very anxious and concerned as to what to do. I am sure Mr. Faith told you that I am out of money and unable to meet payroll and other expenses. I had already borrowed all I could borrow. Things just moved much slower than we had figured and it looks as if it will be slow like this for six to twelve months more. Earl worked real hard day and night trying to make the business go. We got a good reception, but too many stores said wait until after the first of the year or until later on. We have several excellent prospects such as Neiman-Marcus, Clarks, Cox's Department Store, but who knows how many months it may be before we will get a signed lease. We still have not gotten Krogers signed up. First they talked as if they wanted a master lease. Then the home office finally decided on individual leases, but the legal department does not like the wording of your lease. We have already written your office regarding this matter. I still think you have an excellent product and probably in two, three, or four years someone will have a profitable Photo-Scan business in Fort Worth.

Mr. Hendricks tentatively agreed to buy me out for what I had invested in the business, provided he would not have to pay you the additional $3,351 that I still owe, and provided that Earl Kester would work the Fort Worth area for him. Mr. Hendricks said he would have to pay me in monthly installments as he did not have any more cash available. Earl hasn't decided definitely whether he is going to work for Mr. Hendricks.

Since we have not heard anything from you, I decided to write and tell you that the situation is most urgent. Please let me know immediately if it is all right with you to sell to Mr. Hendricks and whether or not Mr. Hendricks would have to pay the additional $3,351 if he does buy me out.

If your answer is 'No,' then I guess my only alternative is to turn my distributorship back to you and let you sell it to someone. I hope I will be able to get back most of what I paid so that I can pay off most of my note. I am sorry, but I think that is the best thing to do. I want to thank you for everything you did for us. We certainly appreciate all that you have done.

Please let me hear from you by return 'air mail.' Write me at my home address above as I have already given up our office and post office box. In case you wish to ·call me, my home telephone number is Ci6–1946, area code 817.

Sincerely,
/s/ Johnny W. Kromer."

3) On January 3, 1967, Defendant replied:

"Dear Johnny:

Thanks for your letter dated December 31st in connection with your Distributorship and your inability to carry on as you had originally planned.

I regret we cannot waive the $3,351.-25 balance due on your deposit in accordance with the Agreement dated September 8, 1966. We have to pay a one-time royalty on each Distributorship in connection with the patents. This is a substantial amount. Furthermore, we cannot extend Agreements to one Distributor which are more favorable then to another.

Furthermore, I wish to bring to your attention that you have been in violation of Paragraph 22 of the Distributor's Agreement for quite some time. Your account, as of 11/25/66 and 12/25/66, is $4,660.23 past due.

I have this morning talked with Mr. Gerson Lewis of Financial Corporation in Chicago and have been advised that he has paid some leases to you in the amount of approximately $2,-000.00 several weeks ago, yet you did not make payment ·to us on any of your outstanding invoices. This, Johnny, is an unfair manner in which to handle this.

**464**

We have extended every possible courtesy and are very disappointed that no payment whatsoever has been made, although you have received some leases in connection with the installations.

We therefore have no alternative but to serve notice of our intention to terminate the Agreement in accordance with Paragraph 26 of the Distributor's Agreement, and the Agreement will be considered automatically terminated if the account is not paid within Thirty (30) days from the date of this letter.

Yours very truly,
Ronald C. Hibbard
President"

4) On February 11, 1967, Plaintiff responded:

"Dear Mr. Hibbard:

Although I have not received an answer to my last two letters, I know you are very busy. I am sorry, but the person I have been talking to has decided not to buy our Fort Worth franchise, and I will not be able to pay the balance of what I owe you. So I would like to terminate or return my franchise to you so you can sell it to someone else who can 'make it go' for you.

I think it would be to your best interests to get another distributor here as soon as possible as there are several good prospects here that someone needs to see about real soon. Since I don't have Earl anymore or the money to hire anyone, I can't operate the business because I don't have the technical knowledge to install and maintain the equipment. (And there always seems to be a lot of technical problems).

I am returning for credit all the equipment on hand. Then I guess the balance of my account will have to be settled out of my deposit money. After that then, I hope you will return the balance of my unused deposit, except for whatever reasonable expenses you feel I should pay, be-cause I need that deposit real bad to apply on my note.

I know you are fair, and I shall certainly appreciate all considerations.

Most sincerely,

/s/ Johnny Kromer"

As far as this Court can determine from the evidence and briefs before it, Photo-Scan undisputedly fulfilled its part of the contract until January 3, 1967, at which time the letter of that date, referred to above, was written.

Reviewing the chain of events it seems to be established that Mr. Kromer had run out of money, could no longer keep vital employees, and generally could not carry on the business by the time he wrote the December 31 letter. He was negotiating to sell out to a Mr. Hendricks and he expressed that the situation was most urgent. Viewing everything that had happened prior to the completion and sending of said letter, it would be fair to say that Mr. Kromer had gone as far as he could in running the business; all operations on his part had stopped and he was seeking some way to get out.

"Repudiation consists in 'such words or actions by a contracting party as indicate that he is not going to perform his contract in the future. * * * It is conduct which shows a fixed intention to abandon, renounce, and refuse to perform the contract." Continental Casualty Co. v. Boerger, Tex.Civ.App., 389 S.W.2d 566 (Dismissed).

Since no testimony was presented in this case the Court must try to see what actually happened by viewing the letters, exhibits, and pleadings before it. On December 31, 1966, Kromer's letter states, "I am out of money and unable to meet payroll and other expenses. I had already borrowed all I could borrow." In the letter dated February 11, 1967, Kromer says: "Since I don't have Earl anymore or the money to hire anyone, I can't operate the business because I

don't have the technical knowledge to install and maintain the equipment." The letter dated December 9, 1966 is one in which Earl (Earl H. Kester referred to in the February 11 letter) resigns "In view of the capital situation". Evidently Earl is referring to Kromer's inability to pay him. So from December on, Kromer was without the man who ran the business and by his own statements in the February 11 letter Kromer could not run the business himself. So it would be logical to assume the business was at a standstill. This assumption is further supported by the fact that sometime right before the end of December Kromer tried to sell out because, as expressed in the December 31 letter, he could not carry on the business. Also, Kromer's last purchase of equipment from Photo-Scan was on November 17, 1966. Finally, as a culmination of his forced abandonment of the business, Kromer wrote Photo-Scan on December 31, 1966. The admitted action of Kromer and his December 31 letter showed that he was not performing his part of the contract and could not do so in the future. He intended to abandon the contract. According to him, he had no choice but to abandon it. Also, in this December 31 letter he made a request which he had no right to ask for under the contract. In order to sell out he wanted Photo-Scan to disregard the $3,351.00 he owed them under the contract. The letter went on to say that if they would not do this the only alternative was to turn the distributorship back to Photo-Scan. This is a repudiation of the contract. Humphrey v. Placid Oil Company, 142 F.Supp. 246 (E.D.Tex., 1956) states that

"Such an anticipatory breach or repudiation has been committed when one party to the contract demands of the other a performance to which he has no right under the contract and states definitely that unless his demand is complied with he will not render his promised performance."

In the letter before the Court, Kromer actually said, "If your answer is 'No' then I *guess* my only alternative. \* \* \*" (Emphasis added.) The word "guess" interpreted strictly does not connote a definite statement. But it is commonly used when the speaker actually means to convey a more definite feeling than the actual word spoken. The Court has the advantage of hindsight, and the facts show that Kromer definitely meant to turn the business back to Photo-Scan if their answer was "No", because that is exactly what he did.

Therefore, this Court finds that the Plaintiff Kromer repudiated the contract by his actions and words.